## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

TERESITA WATKINS,

    *Plaintiff*,

  v.

DEPARTMENT OF JUSTICE, *et al.*,

    *Defendants.*

Civil Action No. 23-766 (RDM)

### <u>MEMORANDUM OPINION</u>

  Plaintiff Teresita Watkins, proceeding *pro se*, commenced this action against the Department of Justice ("DOJ"), as well as three individual defendants—Aretha Ballen, Martin Jones, and Aysha Savage—on March 17, 2023.  Dkt. 1 at 1–2 (Compl.).  Watkins worked in the DOJ's Executive Office for Immigration Review ("EOIR") for 16 years, *see* Dkt. 10-1 at 23, Dkt. 12-1 at 5, before resigning from her position as a travel management specialist at age 57, Dkt. 12 at 3.  She seeks compensatory and punitive damages for age discrimination, retaliation, and hostile work environment harassment in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 623, and Title VII, 42 U.S.C. § 2000e.  Dkt. 11 at 4–5 (Am. Compl.).

  Defendants moved to dismiss Watkins's initial complaint on August 11, 2023, pursuant to Federal Rules of Civil Procedure 8(a), 10(b), 12(b)(1), and 12(b)(6).  Dkt. 8.  This Court granted that motion, holding that Watkins's initial complaint "appear[ed] to be cut off or incomplete," "fail[ed] to contain a short and plain statement showing [Watkins] [wa]s entitled to relief as is required by Fed. R. Civ. P. 8(a), and fail[ed] to state a claim upon which relief c[ould] be granted for purposes of Fed. R. Civ. P. 12(b)(6)."  Min. Order (Nov. 16, 2023).  Accordingly,

the Court dismissed that initial complaint without prejudice and granted Watkins leave to file an amended complaint within 45 days. *Id.*

Watkins filed her amended complaint on January 1, 2024. Dkt. 11 (Am. Compl.). Defendants move to dismiss the amended complaint, again under Federal Rules of Civil Procedure 8(a), 10(b), 12(b)(1), and 12(b)(6), Dkt. 14, and that motion is now before the Court. For the reasons explained below, Watkins's amended complaint suffers from the same infirmities as her initial complaint. First, it does not conform to Rule 8(a)'s requirement that a complaint contain a "short and plain statement" of facts entitling Watkins to relief or Rule 10(b)'s requirement that allegations be presented "in numbered paragraphs." More importantly, however, Watkins's amended complaint fails to state a claim upon which relief can be granted for purposes of Rule 12(b)(6), even taking into account the context provided by her other filings in this case. The Court will, accordingly, **GRANT** Defendants' motion and **DISMISS** Watkins's amended complaint.

## I.  LEGAL STANDARD

Although pleadings by *pro se* litigants are "held to less stringent standards than formal pleadings drafted by lawyers," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal quotation marks and citation omitted), they still must comply with the Federal Rules of Civil Procedure, *see Jarrell v. Tisch*, 656 F. Supp. 237, 239 (D.D.C. 1987).

Some of those rules, like Rules 8(a) and 10(b), impose requirements as to form that ensure that defendants can understand and respond to the allegations levied against them. "Federal Rule of Civil Procedure 8(a) requires that a complaint contain a short and plain statement of the grounds upon which the Court's jurisdiction depends, a short and plain statement of the claim showing that the pleader is entitled to relief, and a demand for judgment

for the relief the pleader seeks." *Shipman v. Amtrak*, No. 19-cv-04, 2019 WL 4889246, at *1 (D.D.C. Oct. 3, 2019) (citing Fed. R. Civ. P. 8(a)). The rule is designed to "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal punctuation and citation omitted).

Rule 10(b) requires that a complaint "state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances." Fed. R. Civ. P. 10(b). It "ensures that a plaintiff breaks his or her complaint down into a series of discrete factual allegations, which the defendant must, in turn, admit or deny." *Matthews v. McDonough*, 21-cv-1607, 2023 WL 4174319, at *1 (D.D.C. June 26, 2023).

Rules 8(a) and 10(b) are not simply traps for the unwary. Rather, they ensure that the case can proceed fairly and efficiently after the complaint is filed. Defendants need to be able to discern what a plaintiff is alleging in order to know how to defend against the claims, and failure to comply with Rules 8(a) and 10(b) can make that impossible. When plaintiffs fail to comply with Rule 8(a), defendants can be left without a clear sense of the case being brought against them. And when plaintiffs "fail[] to comply with Rule 10(b)," defendants can be "left at a loss with respect to how to answer." *Id*. Thus "[w]hen a litigant—even a *pro se* litigant—fails to comply" with these form-based rules, "the court may dismiss the complaint." *Id*.

Other rules, like 12(b)(1), ensure that the case has been brought by a party with standing in a court with authority to adjudicate the case. Rule 12(b)(1) allows a party to contest whether the court has subject matter jurisdiction over a claim. Federal courts are courts of limited jurisdiction, and the plaintiff bears the burden to establish that subject-matter jurisdiction is proper. *See Grand Lodge of Fraternal Order of Police v. Ashcroft*, 185 F. Supp. 2d 9, 13 (D.D.C. 2001). If she does not allege facts sufficient to support jurisdiction, the court may

"dispose of a motion to dismiss for lack of subject matter jurisdiction . . . on the complaint standing alone." *Herbert v. Nat'l Acad. of Sciences*, 974 F.2d 192, 197 (D.C. Cir. 1992).

Other rules go to the substance of the complaint. Most notably, Rule 12(b)(6) is designed to "test[] the legal sufficiency of a complaint." *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). A claim is plausible if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. As the Supreme Court has explained, a court need not accept as true any "'legal conclusion couched as a factual allegation,'" "'naked assertion[]' devoid of 'further factual enhancement,'" or "'formulaic recitation of the elements of a cause of action.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555, 557) (alteration omitted).

For *pro se* litigants, the D.C. Circuit has instructed that a district court should "consider a *pro se* litigant's complaint 'in light of' all filings, including filings responsive to a motion to dismiss." *Brown v. Whole Foods Mkt. Grp. Inc.*, 789 F.3d 146, 152 (D.C. Cir. 2015); *see also Ho v. Garland*, 106 F.4th 47, 50 (D.C. Cir. 2024). Applying this principle, the Court will review Watkins's amended complaint, Dkt. 11, in light of her filing in opposition to Defendants' renewed motion to dismiss, Dkt. 17, the exhibits she attached to her motion for extension of time, Dkt. 10, and her late-submitted opposition to Defendants' first motion to dismiss, including the attachments, Dkt. 12. *See Hylton v. Watt*, No. 17-cv-2023, 2018 WL 4374923, at *3 (D.D.C. Sept. 13, 2018). These additional materials, however, should be used only as interpretive aids; they are not a substitute for a well-pleaded complaint. The complaint itself must, therefore, still

"contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its

face," *Ho*, 106 F.4th at 50 (internal citations and quotation marks omitted).

## II. ANALYSIS

Watkins's amended complaint does not comply with Rules 8(a) or 10(b).  Its "statement

of claim" is opaque.  In its entirety, it reads:

> Employed with the Department of Justice (EOIR) Executive Office of
> Immigration Review Office.
>
> 3 defendants Martin Jones, Aretha Ballen, Aysha Savage, Caused severe harm.
> Facts: I was subject within a harmful, stressful hostile working environment.
>
> 1. Discrimination: Age, Illness, Promotion, Disparate treatment. (Martin Jones
> and Aretha Ballen).
>
> 2. Harassment: Extra Duties, False Performance Appraisal Ratings, Written and
> Verbal threats. (all 3 defendants)
>
> 3. Retaliation: Verbal and mental abuse. psychological injury. Pervasive
> conduct. (all 3 defendants)
>
> Request for enforcement of the legal rights. Under the Civil Rights Act of 1991
> - Title VII.

Dkt. 11 at 4.  The statement requesting relief adds:

> I ask the court to grant relief and damages on the basis of violation of the laws
> and legal entitlement, Includes sufficient facts based on the legal claim and true
> statements.
>
> Compensatory Damages - Economic losses future and back pay GS-12/10,
> hardship, severe mental stress, pain and suffering. Mental and Emotional
> Trauma.
>
> Punitive / Exemplary Damages - Wrong and offensive misconduct, difficulties
> coping with life, Constant traumatic thoughts about the events of harassment,
> reta[li]ation and discrimination suffered.
>
> Request relief related to the 7th Amendment, rights to a jury tr[i]al. Where my
> claim exceeds $75,000,
>
> Estimated amount of relief $1,300.000 made in good faith.

CIVIL SERVICE REFORM ACT OF 1978 - Protect employees from unfair or unwarranted practices.

EQUAL PAY ACT - Seniority and merit systems, qualification after-acquired evidence of actions of the employee.

EQUITABLE REMEDY RELIEF -, Front pay, and back pay,

AGE DISCRIMINATION EMPLOYMENT ACT OF 1967 - Refuse to promote employees 40 years of age or older.

*Id.* at 4–5.

The amended complaint is an improvement on her earlier attempt and does provide *some* information about her claims.  She has identified the relief she seeks (damages) and the types of claims she intends to pursue (discrimination, harassment, and retaliation).  Her amended complaint, however, still fails to meet the minimum pleading standard set forth in Rule 8(a).  The level of detail required by Rule 8(a) varies from case to case and depends on "the nature of the action, the relief sought, and the respective positions of the parties in terms of the availability of information and a number of other pragmatic matters."  5 Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 1217 (3d ed. 2004).  At the very least, however, "[t]he court or opposing party must be able to understand whether a valid claim is alleged and if so what it is." *Poblete v. Indymac Bank*, 657 F. Supp. 2d 86, 96 (D.D.C. 2009) (internal quotation marks and citation omitted).  Here, the complaint's factual allegations are too vague and conclusory to state a viable legal claim or to give the defendants reasonable notice of the claims against them.  As the defendants point out in their motion to dismiss, Watkins has not "provide[d] any particulars whatsoever that would allow [them] to formulate a response."  Dkt. 14 at 6.

Nor has she organized her amended complaint into "numbered paragraphs, each limited as far as practicable to a single set of circumstances" as required by Rule 10(b).  Defendants argue that this "unstructured form . . . makes it impossible for [them] to either admit or deny any

6

particular issue or allegation."  Dkt. 14 at 6–7.  The Court agrees.  Take, for example, Watkins's

allegations with respect to retaliation: "Verbal and mental abuse. psychological injury. Pervasive

conduct."  Dkt. 11 at 4.  How are defendants meant to respond to those allegations?  Or to begin

an investigation into whether they are true?

    Watkins's failure to comply with Rules 8(a) and 10(b) also makes it difficult for the

Court to parse her claim and determine whether she is plausibly entitled to relief.  First, it is not

clear that Watkins has named a proper defendant.  "Title VII and the ADEA," under which the

Court understands Watkins to be alleging her claims, "do not impose individual liability" and

"the only proper defendant in suits brought under these statutes is the head of the department or

agency being sued."  *Wilson v. Dep't of Transp.*, 759 F. Supp. 2d 55, 67 (D.D.C. 2011).  The

defendants named in Watkins's amended complaint differ from section to section.  In the case

caption, she names "U.S. Department of Justice," "Martin Jones, Aretha Ballen, [and] Aysha

Savage," Dkt. 11 at 1, but on the next page under "Defendants" she lists only the three individual

defendants, Dkt. 11 at 2.  Her complaint again refers to the Department of Justice in the basis for

jurisdiction section, Dkt. 11 at 4, but the statement of claim returns to identifying "3 defendants"

and lists only Jones, Ballen, and Savage.  Jones, Ballen, and Savage are not the head of the

relevant department or agency and are not subject to individual liability under Title VII or the

ADEA.  The Court will thus dismiss all claims against those three individual defendants.

    Assuming that Watkins does intend to maintain suit against the Department of Justice as

well (in which case the Court would substitute the head of the department as sole defendant, *see*

*Wilson*, 759 F. Supp. 2d at 67), her amended complaint fails to state a claim upon which relief

can be granted and must be dismissed under Rule 12(b)(6).  The cursory and conclusory

language contained therein, even viewed in light of Watkins's other filings, lacks the factual

detail necessary for the Court "to draw the reasonable inference that the [D]efendant is liable" for discrimination, harassment, or retaliation under Title VII or the ADEA. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

**A.    Title VII Claims**

Watkins first alleges several Title VII violations against Defendants for discriminating against her based on "Age, Illness, Promotion, [and] Disparate treatment," Dkt. 11 at 4, but none of these provide grounds for relief under Title VII. "Title VII prohibits discrimination based on an individual's 'race, color, religion, sex, or national origin,' but not based on an individual's age." *Mohmand v. Broad. Bd. of Governors*, No. 17-cv-618, 2018 WL 4705800, at *3 (D.D.C. Sept. 30, 2018) (quoting 42 U.S.C. § 2000e-2(a)). Nor does Title VII provide a cause of action for discrimination based on "illness" or disability. *Thomas v. District of Columbia*, 2023 WL 2610512, at *3 (D.D.C. March 23, 2023). Turning to Watkins's allegations of discrimination based on "Promotion" and "Disparate treatment," those words do not provide the Court sufficient factual basis to understand the nature of the discrimination alleged so as to determine whether Watkins has a viable Title VII claim, and Watkins's other filings do not fill that gap. Nowhere in the hundreds of pages Watkins has filed with the Court does she mention race, color, religion, sex, or national origin. And none of the dozens of emails she has attached support any inference that any of the treatment Watkins complains of was due to her membership in any of the classes protected under Title VII. As a result, to the extent that Watkins alleges discrimination in violation of Title VII, she has failed to state a claim on which relief can be granted and those claims are thus subject to dismissal pursuant to Rule 12(b)(6).

**B.     ADEA Claims**

In Watkins's statement of claim, she mentions only Title VII, *see* Dkt. 11 at 4, but she

explicitly alleged discrimination based on "[a]ge," *id.*, and invokes the ADEA in her request for

relief, *see id.* at 5.  The Court will thus consider Watkins's allegations under the ADEA as well.

She alleges three types of claims: "discrimination," which the Court construes as a disparate

treatment claim; "harassment," which the Court construes as a hostile work environment claim;

and retaliation.

1.     *Disparate treatment*

To successfully press a disparate treatment claim under the ADEA, a plaintiff must show

"(1) that she suffered an adverse employment action (2) because of her [age]." *Lurensky v.

Wellinghoff*, 167 F. Supp. 3d 1, 15 (D.D.C. 2016).  "A plaintiff must prove both elements to

sustain a discrimination claim."  *Baloch v. Kempthorne*, 550 F.3d 1191, 1196 (D.C. Cir. 2008).

To demonstrate an adverse employment action, a plaintiff needs to show that she has suffered

discrimination with respect to her "terms, conditions, or privileges of employment."  42 U.S.C.

§ 2000e–2(a)(1).  To do so, she must show "some harm respecting an identifiable term or

condition of employment," but she need not show that "the harm incurred was significant[, or]

. . . serious, or substantial, or any similar adjective suggesting that the disadvantage to the

employee must exceed a heightened bar."  *Muldrow v. City of St. Louis*, 144 S. Ct. 967, 974

(2024).

Watkins's amended complaint, viewed alongside her other filings, describes several

adverse actions.  Most importantly, Watkins alleges that her employer "[r]efuse[d] to promote

employees 40 years of age or older," Dkt. 11 at 5, and that she was personally "excluded from an

equal opportunity to apply for a position with promotion potential. (Lead Travel Specialist)."

Dkt. 12 at 2.  But she has not alleged sufficient facts to tie that exclusion to her protected class. A plaintiff can establish an inference of discrimination by providing either "direct evidence of . . . animus" or a comparison to a similarly situated employee.  *Yuvienco v. Vilsack*, No. 23-186, 2024 WL 727712, at *3 (D.D.C. Feb. 22, 2024).  Where a plaintiff asks the Court to infer discrimination by comparing her treatment to that of a similarly situated employee, the plaintiff "must also demonstrate that all of the relevant aspects of h[er] employment situation were nearly identical to those of the other employee."  *Burley v. Nat'l Passenger Rail Corp.*, 801 F.3d 290, 324 (D.C. Cir. 2015) (internal quotations and alterations omitted).  Here, Watkins has neither alleged facts that would allow the Court to infer direct animus, nor pointed the Court to a similarly situated, younger employee who was allowed to apply for the promotion—much less alleged that such an employee was "nearly identical" in "all of the relevant aspects."  Watkins's conclusory allegations, without more, cannot support an inference of discrimination.

Watkins's other allegations suffer the same deficiency.  She alleges that she was given new duties, *see* Dkt. 10-1 at 51 (being assigned a new duty after a coworker retired); Dkt. 12-1 at 30 (being asked to, among other things, identify all tasks assigned from staff meetings); Dkt. 10-1 at 119 (being asked to train a new employee); Dkt. 10-1 at 121 (being assigned new "Funds availability" duties), but does not tie the assignment of those duties to her age in any way.  She complains of bad performance appraisals, *see* Dkt. 12 at 3, Dkt. 12-1 at 46, Dkt. 17 at 2, but nothing suggests that those appraisals were age-related either.  She does claim in some places that she was treated differently from *all* other members of her division, *see, e.g.*, Dkt. 12-1 at 27 ("No other employees had to wait for signature[s] on their telework request[s] only me."), but she has not provided any information about the other members of her team that would allow the Court to conclude that treatment was age-related either.

In short, the Court can find nothing in the more than 200 pages of filings in this case that would allow it to infer that any of the adverse actions alleged were due to age discrimination. Her disparate treatment claims therefore cannot survive a Rule 12(b)(6) motion to dismiss.

2.      *Hostile work environment*

Although neither the Supreme Court nor the D.C. Circuit has expressly held that hostile work environment claims are cognizable under the ADEA, other circuits have recognized such claims, and numerous decisions in this circuit, including in the court of appeals, have assumed the same. *See, e.g.*, *Baloch*, 550 F.3d at 1201; *Moore v. Castro*, 192 F. Supp. 3d 18, 47–48 (D.D.C. 2016). Assuming such a claim is available, Watkins has nonetheless failed to sufficiently plead it.

"A plaintiff asserting a claim based on a hostile work environment faces a high hurdle." *Fields v. Vilsack*, 207 F. Supp. 3d 80, 92 (D.D.C. 2016). She must allege facts sufficient to "show that [her] employer subjected [her] to 'discriminatory intimidation, ridicule, and insult' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Baloch*, 550 F.3d at 1201 (quoting *Harris v. Forklift Sys. Inc.*, 510 U.S. 17, 21 (1993)). Hence, "even a few isolated incidents of offensive conduct do not amount to actionable harassment." *Vilsack*, 207 F. Supp. 3d at 94 (quoting *Stewart v. Evans*, 275 F.3d 1126, 1134 (D.C. Cir. 2002)). This limit on hostile work environment claims avoids imposing "a general civility code" through federal civil rights statutes and "filter[s] out complaints attacking the ordinary tribulations of the workplace." *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (internal quotation marks omitted).

By its nature, this is not a "mathematically precise test," and courts consider factors such as "the frequency of the discriminatory conduct; its severity; whether it is physically threatening

or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris*, 510 U.S. at 22–23.  The employer's "conduct must be extreme," and it must be "both objectively and subjectively offensive," such "that a reasonable person would find" the conduct "hostile or abusive." *Faragher*, 524 U.S. at 787–88.

Watkins's amended complaint does not provide enough information for the Court to infer that she was subject to a hostile working environment because of her age.  The only three factual allegations—"Extra Duties, False Performance Appraisal Ratings, Written and Verbal threats"— are each vague and untethered to Watkins's membership in the protected class and do not contain enough information to state a claim for relief.  Dkt. 11 at 4.  Her complaint also alleges "[p]ervasive conduct," *id.*, but conclusory allegations that restate the legal standard for hostile work environment claims without offering supporting facts do not "satisfy the pleading requirements established in [*Twombly*]," *Achagzai*, 170 F. Supp. 3d at 184.

Watkins's attached materials shed some light on the allegations in her amended complaint, but again do nothing to tether those allegations to her membership in the protected class.  The attached materials largely consist of scanned emails with handwritten notes on them. In those notes, Watkins often uses conclusory language, stating, for example, that "the harassment was intolerable," Dkt. 12 at 3, and sometimes simply labeling an email as "harassment," *see* Dkt. 12-1 at 3.  The emails and notes do, however, reveal a few concrete incidents, including allegations that Ballen and Savage intentionally sabotaged Watkins's ability to perform her tasks by removing her name from the task-routing list or deleting emails she was working on from a shared inbox, *see* Dkt. 10-1 at 77, 131, 133, 135, 137; that Watkins was assigned extra duties, *see* Dkt. 12-1 at 29, 30, 41; Dkt. 10-1 at 51, 109, 143, 155, 163; that Jones and Ballen informed Watkins on several occasions that her job was at risk, *see* Dkt. 10-1 at 5–9,

29, 109; that Savage called Watkins a "b[****]," *id.* at 181; that Savage "force[d]" Watkins to "engage in a meeting" that she was "not aware of," *see* Dkt. 12-1 at 21; that Jones scheduled the team's end-of-year pizza luncheon on Watkins's "AWS Day off," Dkt. 10-1 at 31; and that in one instance another co-worker—who is not a named defendant—yelled at Watkins to "mind [her own] business," *see* Dkt. 10-1 at 107.

Even considering all of the incidents identified in Watkins's filings together, the Court is unpersuaded that Watkins has alleged enough to clear the "high hurdle" of pleading a hostile work environment. Most of the incidents identified are either too isolated or insufficiently severe to state a hostile work environment claim. *See Stewart*, 275 F.3d at 1134. The incidents in Watkins's exhibits span three years and most of them are not "objectively and subjectively offensive" or the type of thing that a "reasonable person" would find "hostile or abusive." *Faragher*, 524 U.S. at 787–88. Take, for example, the assignment of extra duties. Employees are often assigned extra duties across the years, especially when a coworker who previously performed that duty leaves. *See* Dkt. 10-1 at 51. The Court struggles to see how the assignment of extra duties, without more, would be something the average person would find offensive or abusive. The same is true with respect to the allegations that Watkins was forced to attend a meeting or missed out on the team's pizza luncheon because it was planned for her day off.

Repeated, intentional sabotage of work, however, can in extreme cases give rise to a hostile work environment. Watkins alleges that her supervisors (and others) sabotaged her work by removing her name from the servers that sent out new assignments, *see* Dkt. 10-1 at 133, and removing her work from a shared inbox, *see* Dkt. 10-1 at 137. The Court has found three such allegations in Watkins's filings: one on August 18, 2017, one on October 18, 2017, and one on December 13, 2018. Dkt. 10-1 at 131, 133, 135–37. But Watkins's filings suggest that, rather

13

than a pattern of recurring, similar sabotage, these incidents were different in kind and alleged to have been perpetrated by different coworkers.  Regarding the August incident, Watkins's attachments contain very little information.  They say only that she "sent a [] complaint of [her] work being removed."  Dkt. 10-1 at 131.  In the October incident, Watkins's "e-mails [were] corrupted" and "placed in the wrong boxes."  Dkt. 10-1 at 135.  Watkins alleges at one point that the emails were moved by Farrah Bailey, who is not named as a defendant here, Dkt. 10-1 at 137, but in another email she states that "Savage . . . was the person who removed all of my processed work back into the main box," Dkt. 10-1 at 181.  In the December incident, "someone" removed Watkins's name from the "routing access" so that Watkins "was not receiving the work to process," after which "Aretha [Ballen] would write emails stating I was not completing work." Dkt. 10-1 at 77.  Although troublesome, three such incidents of this type over the course of two years is not sufficiently pervasive to give rise to a hostile working environment, especially given the differences between them.  *See Barbour v. Browner*, 181 F. 3d 1342, 1348 (D.C. Cir. 1999) (citing approvingly to cases in which other Courts of Appeals found no hostile working environment where plaintiffs alleged "five mild incidents of harassment over [a] 16 month period" and "two incidents over [a] three week period").

To be sure, the D.C. Circuit has suggested that a single, sufficiently severe incident may suffice to create a hostile work environment.  *See Ayissi-Etoh v. Fannie Mae*, 712 F.3d 572, 577 (D.C. Cir. 2013) (per curiam).  But, here, none of the events described by Watkins in her attached materials rise to the level of severity required to state such a claim.  *Cf. id*. at 579–80 (Kavanaugh, J., concurring) (collecting cases in which plaintiffs were subjected to "physical assault," "sexual assault," "racially hostile graffiti that amounted to [a] death threat," and "a burning cross").  Savage's one-off discrete act of using inappropriate, offensive language

towards Watkins is the most likely candidate, but one instance of name-calling of the type alleged here is not sufficiently severe, even when combined with the allegations of sabotage and extra work.  *See Barbour*, 181 F.3d at 1348 (holding that two hostile incidents over two years, supplemented with conclusory statements regarding mildly harassing behavior, were insufficiently severe or pervasive to constitute a hostile work environment).

Even if Watkins's allegations, taken together, would suffice, moreover, she does not allege any facts that tie this hostility—which Watkins alleges forced her to retire—to the relevant protected class.  On the contrary, she alleges at one point that "the purpose" of her being forced out was "to hire defendant Aysha Savage['s] friend . . . Farrah Bailey[] to replace" her.  Dkt. 17 at 4.  Although that might be a shoddy reason to mistreat a person, it is not the type of improper motivation actionable under federal antidiscrimination laws like the ADEA.  *See Johnson v. Hartogensis*, 2023 WL 6479495, at *8 (D.D.C. Oct. 5, 2023) (noting that nonselection due to nepotism is not actionable under Title VII or the ADEA).  Watkins's hostile work environment claim, even reviewed in light of her attached filings, cannot survive the Defendants' motion to dismiss.

3.  *Retaliation*

As to Watkins's retaliation claim, the ADEA prohibits an employer from subjecting employees to an adverse employment action for complaining of, or participating in investigations of, alleged discriminatory acts.  29 U.S.C. § 623(d).  To prevail on a claim of unlawful retaliation under the ADEA, a plaintiff must show that (1) she engaged in activity protected by the ADEA; (2) she suffered an adverse employment action; and (3) there was a causal connection between the protected activity and the adverse action.  *See Passer v. Am. Chem. Soc'y*, 935 F.2d 322, 331, 290 U.S. App. D.C. 156 (D.C. Cir. 1991).  Again, Watkins's amended complaint provides only

cursory and conclusory allegations in support of her retaliation claim.  It states only: "Verbal and mental abuse. psychological injury. Pervasive conduct."  Dkt. 11 at 4.  This does not provide the Court with enough information to determine whether Watkins has a potential retaliation claim.  It does not contain any particulars as to the adverse action alleged, identify any protected activity, or connect the alleged abuse to such an activity.  Given that deficit, the Court cannot draw an inference of liability that supports Watkins's retaliation claim from the complaint alone.

Watkins's other filings are not enlightening on this score.  With respect to her retaliation claim, her opposition to the Defendants' motion to dismiss the amended complaint states twice that the adverse actions she suffered were "because of whistleblowing" but does not specify the whistleblowing activity.  Dkt. 17 at 1, 4.  Her opposition to the Defendants' motion to dismiss her initial complaint provides more details, but still does not establish any connection to an ADEA-protected activity.  There, she stated that she was "[f]alsely accused for not being productive" and "given an excessive number of extra duties" that were "extremely overwhelming and impossible to complete in a reasonable manner."  Dkt. 12 at 2.  She was then "reprimanded for voicing [her] concern" and "excluded from attending important meetings" and her supervisors "made it extremely difficult for [her]."  *Id.* at 2–3.  The Court thus understands Watkins to be alleging that her supervisors retaliated against her when she voiced concerns about excessive work.  That is, however, not an activity protected under the ADEA.

Nor do Watkins's attached exhibits add enough context to "nudge[] [her] claims across the line from conceivable to plausible."  *Twombly*, 550 U.S. at 570.  Watkins's emails do show that she reached out to the DOJ's Employee Assistance Program in June 2017, *see* Dkt. 12-1 at 6, and met with the EEO program director on August 15, 2017, *see* Dkt. 10-1 at 49, and that after that meeting, she requested several "accommodations" to alleviate the "hostile work

environment" in which she was "discriminated against," Dkt. 12-1 at 8–9.  The requested accommodations included an "immediate permanent transfer," a change of her performance appraisal, a "stop" to the "bullying, harassment, disrespect, lies, miscommunication, discrimination, and unfairness," a "grade increase" and promotion, and that she not "have any communication" with Savage, Jones, and Ballen.  Dkt. 12-1 at 8.  In that email, she also stated: "My birthday date is May 2, 1962."  *Id.*  A later email from her requested that she be placed on "temporary permanent telework" until she could be transferred.  *Id.*  In December 2017, she sent another email "choosing to withdraw [her] claim and basis of EEO retaliation from [her] complaint."  Dkt. 10-1 at 107.  Watkins has included handwritten notes over that email, stating that she was "misled and called in and persuaded to choose to withdraw [her] claim," because she had "included" a coworker who is not a party to this case.  *See* Dkt. 10-1 at 107.

Taking into account those documents, the Court can infer that Watkins may have engaged in some sort of protected activity around June 2017.  It is less clear, however, that she engaged in activity protected under the ADEA.  The only evidence that her EEO complaint was age-related is the single sentence where she tells someone in the EEO office her birthday.

Assuming that she has provided enough to support such an inference, moreover, Watkins alleges two adverse actions related to her retaliation complaint: "false incorrect performance evaluation[s]" and "extra duties," Dkt. 17 at 5.  The adverse action standard is different for retaliation claims than for disparate treatment claims.  *See Muldrow*, 144 S. Ct. at 976 (distinguishing the reasoning underlying Title VII's anti-retaliation and anti-discrimination provisions); *Chambers*, 35 F.4th at 876 (explaining that the court's conclusion about Title VII's antidiscrimination provision is consistent with the prevailing interpretation of the anti-retaliation provision in light of the "fundamental differences between the antidiscrimination and

17

antiretaliation provisions").  "To prove retaliation, the plaintiff generally must establish that he

or she suffered (i) a materially adverse action (ii) because he or she had brought or threatened to

bring a discrimination claim."  *Baloch*, 550 F.3d at 1198; *see also* 42 U.S.C. § 2000e–3(a); 29

U.S.C. § 621 *et seq.*; 29 U.S.C. § 701 *et seq.*  A "materially adverse action" is one that would

have "dissuaded a reasonable worker from making or supporting a charge of discrimination."

*Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (quoting *Rochon v. Gonzales*,

438 F.3d 1211, 1219 (D.C. Cir. 2006)).  This standard is objective and captures only

"significant," rather than "trivial," harms.  *Id.*  It does not reach every "[m]inor and even trivial

employment action[ ] that an irritable, chip-on-the-shoulder employee did not like," *Bridgeforth*

*v. Jewell*, 721 F.3d 661, 663 (D.C. Cir. 2013) (quoting *Russell v. Principi*, 257 F.3d 815, 818

(D.C. Cir. 2001)), and an adverse action for this purpose "[t]ypically . . . involves 'a significant

change in employment status, such as hiring, firing, failing to promote, reassignment with

significantly different responsibilities, or a decision causing significant change in benefits,'" *id.*

(quoting *Taylor v. Small*, 350 F.3d 1286, 1293 (D.C. Cir. 2003)).  The two adverse actions

alleged by Watkins—the negative performance reviews she received (which potentially made her

ineligible for telework, *see* Dkt. 10-1 at 21) and the extra duties she was assigned—likely

constitute adverse actions even under this stricter standard.

Watkins, however, has not adequately alleged a "causal connection" between her

"protected activity" and the alleged "adverse action[s]."  *Taylor v. Small*, 350 F.3d 1286, 1292

(D.C. Cir. 2003).  To survive a motion to dismiss on a retaliation claim, a plaintiff must allege

"that he or she was subjected to an adverse action '*because of*' protected activity."  *Menoken v.*

*McGettigan*, 273 F. Supp. 3d 188, 200–01 (D.D.C. 2017) (emphasis added).  Watkins's filings

are missing this crucial "because of" point.  The adverse actions identified by Watkins in her

opposition—"false incorrect performance evaluation[s]" and "extra duties," Dkt. 17 at 5—began

before June 2017.  Watkins's first lukewarm evaluation was from February 2017, *see* Dkt. 10-1

at 83, and she was given extra duties as early as May 2017, *see* Dkt. 10-1 at 155.  In short, the

Court, reviewing Watkins's attached submissions *in toto*, finds that the facts alleged therein are

insufficient to state a claim for retaliation under the ADEA and the Court will thus dismiss that

claim pursuant to Rule 12(b)(6) as well.[1]

## C.     Claims Under Other Statutes

Watkins names several other statutes in her amended complaint, *see* Dkt. 11 at 3, 5, but it

is not clear whether she seeks to bring claims under those statutes or whether their invocations

are atmospheric.  In particular, she mentions the Notification and Federal Employee

Antidiscrimination and Retaliation Act of 2002 ("No FEAR Act"), 5 U.S.C. § 2301; the Civil

Service Reform Act, 5 U.S.C. § 1101; and the Equal Pay Act, 29 U.S.C. § 216(b).  In the interest

of completeness, the Court finds that, to the extent Watkins does assert claims under those

statutes, those claims should also be dismissed.

The No FEAR Act does not provide a private cause of action for discrimination.  *See*

*Glaude v. United* States, 248 Fed. App'x 175, 177 (Fed. Cir. 2007); *Baney v. Mukasey*, 2008 WL

706917, at *7 (N.D. Tex. Mar. 14, 2008).  Rather, it imposes on agencies various requirements

related to other antidiscrimination laws.  In particular, it requires agencies to notify their

employees of the antidiscrimination rights and protections available to them, to provide an

annual report to Congress on discrimination, and to reimburse the fund out of which

---

[1] There are also emails suggesting that Watkins filed a second EEO complaint in 2019 around the
time she retired.  *See* Dkt. 10-1 at 101.  That complaint would postdate almost every adverse
action alleged, and any retaliation claim based on that complaint would fail to state a claim for
the same reasons.

discrimination judgments are paid.  *See* Pub. L. No. 107-174, §§ 201–03, 116 Stat. 556, 568–70

(2002).  Watkins's claims under that Act therefore fail to state a claim upon which relief can be

granted and are dismissed pursuant to Rule 12(b)(6).

The Civil Service Reform Act is enforceable only through its "exclusive remedial

scheme," and federal district courts do not have jurisdiction to review claims under that act.

*Coulibaly v. Kerry*, 130 F. Supp. 3d 140, 146–48 (D.D.C. 2015).  Watkins's claims under that

Act are thus dismissed for lack of subject matter jurisdiction pursuant to Rule 12(b)(1).

"The Equal Pay Act establishes the 'principle of equal pay for equal work regardless of

sex.'"  *Cornish v. District of Columbia*, 67 F. Supp. 3d 345, 360 (D.D.C. 2014) (quoting *Corning

Glass Works v. Brennan*, 417 U.S. 188, 190 (1974)).  In order to state a prima facie case under

the Equal Pay Act, a plaintiff "must allege that (1) she was doing substantially equal work on the

job, the performance of which required substantially equal skill, effort, and responsibility as the

jobs held by members of the opposite sex; (2) the job was performed under similar working

conditions; and (3) she was paid at a lower wage than those members of the opposite sex."  *Id*.

Watkins's amended complaint alleges none of these elements.  After invoking the Equal Pay Act,

it states only: "Seniority and merit systems, qualification after-acquired evidence of actions of

the employee."  Dkt. 11 at 5.  The Court struggles to see how that statement is related to an

Equal Pay Act claim and will thus dismiss any Equal Pay Act claim pursuant to Rule 12(b)(6).

Finally, the Court notes that, although Watkins submitted documentation in her

attachments that may have been relevant to a Family and Medical Leave Act claim, *see* Dkt. 10-1

at 1, 3, 15, 27, 67, 127, her amended complaint neither mentions that Act nor provides any

allegation (apart from a single use of the word "Illness") that would be relevant to such a claim.

The Court will thus decline to consider whether Watkins would be able to state a claim under that Act.

* * *

An *in toto* review of Watkins's amended complaint alongside the other materials she has filed leads the Court to the same conclusion that it reached on the sufficiency of Plaintiff's initial complaint:  The amended complaint "fails to contain a short and plain statement showing Plaintiff is entitled to relief as is required by Fed. R. Civ. P. 8(a), and fails to state a claim upon which relief can be granted for purposes of Fed. R. Civ. P. 12(b)(6)."  Min. Order (Nov. 16, 2023).  The Court will, accordingly, dismiss Watkins's amended complaint pursuant to Rules 8(a), 10, and 12(b)(6).[2]

---

[2] The Court further notes that Watkins fails to allege facts sufficient to establish venue.  For purposes of Title VII, venue is proper:

> [1] in any judicial district in the State in which the unlawful employment practice is alleged to have been committed, [2] in the judicial district in which the employment records relevant to such practice are maintained and administered, or [3] in the judicial district in which the aggrieved person would have worked but for the alleged unlawful employment practice, [4] but if the respondent is not found within any such district, such an action may be brought within the judicial district in which the respondent has his principal office.

42 U.S.C. § 2000e-5(f)(3).  Watkins's complaint lists a Virginia address for the defendant-agency, *see* Dkt. 11 at 1, but does not otherwise address venue.

**CONCLUSION**

For the foregoing reasons, the Court will **GRANT** Defendants' motion to dismiss, Dkt.

14.

A separate order will issue.

/s/ Randolph D. Moss
RANDOLPH D. MOSS
United States District Judge

Date:  September 30, 2024